NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLUMBUS LTACH MANAGEMENT, LLC & COLUMBUS LTACH, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>QUANTUM LTACH HOLDINGS, LLC & QUANTUM INTERNATIONAL INCOME CORP.,<br><br>*Defendants.* | Civil Action No. 16-6510<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Defendant Quantum International Income Corp.'s ("Quantum Income") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 3. Plaintiffs Columbus LTACH Management, LLC ("Columbus Management") and Columbus LTACH, LLC ("Columbus") filed a brief in opposition to which Defendant replied. D.E. 4, 5. Defendant Quantum LTACH Holdings, LLC ("Quantum Holdings") did not participate in this motion. The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Columbus is a long-term acute care hospital in New Jersey and Columbus Management "owns all of the issued and outstanding membership interest and financial interest in [Columbus]."

Membership Interest Purchase Agreement ("MIPA") at 1 (D.E. 1-2, 1-3); Compl. at 1. On June 9, 2015, Columbus, Columbus Management, and Quantum Holdings executed the MIPA, through which Columbus Management agreed to sell Columbus to Quantum Holdings. *See generally* MIPA. Quantum Income is not a signatory or party to the MIPA.[1] The MIPA included a dispute resolution clause stating that "[a]ny controversy, dispute, or disagreement arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively by binding arbitration." *Id.* § 11.9. The dispute resolution clause also set forth specific terms and guidelines for arbitration. *Id.*

"After the plaintiffs[2] were unable to deliver the purchase price at closing," Plaintiffs filed a demand for arbitration. Compl. ¶ 8. Defendants did not respond to Plaintiffs' demand. *Id.* ¶ 12. As a result, Plaintiffs filed a twelve-paragraph Complaint in New Jersey state court on August 31, 2016, seeking to compel Defendants to arbitrate "in accordance with the terms of the MIPA." *Id.* at 3. Plaintiffs only seek to compel arbitration; the Complaint does not ask for any other form of relief. *See id.*

In the Complaint, Plaintiffs allege that Defendants collectively negotiated and entered into the MIPA. Compl. ¶¶ 3, 5. Plaintiffs also included a copy of the MIPA as an exhibit to the Complaint. *Id.* ¶ 4, Ex. A. On October 5, 2016, Quantum Income removed this matter to the District of New Jersey (D.E. 1) and filed this motion to dismiss on November 3, 2016 (D.E. 3). In its motion, Quantum Income argues that it did not participate in the underlying transaction and is not a party to the MIPA. As a result, according to Quantum Income, it cannot be compelled to

---

[1] Non-party Richard Lipsky, M.D., the controlling owner of Columbus, is also a party to the MIPA and a signatory. MIPA at 1, 49. Dr. Lipsky's involvement in the transaction appears to be immaterial to this motion.

[2] The Court assumes that "plaintiffs" should have actually been "defendants."

arbitrate this dispute and should be dismissed from the suit. *See generally* Def's Br., D.E. 3-1.

## II. MOTION TO DISMISS STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Courts generally only consider the factual allegations contained in a complaint. A court can also consider exhibits attached to the complaint and undisputedly authentic documents provided by the defendant, if the claims are based on that document. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because Plaintiffs attached the MIPA as an exhibit to their Complaint (Compl. ¶ 4), the Court will consider the

3

document in deciding this motion.

### III. MOTION TO DISMISS ANALYSIS

The Federal Arbitration Act (the "FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate....'" *Singh v. Uber Techs. Inc.*, --- F. Supp. 3d ---, 2017 WL 396545, at *3 (D.N.J. Jan. 30, 2017) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999)). The FAA governs any "agreement to arbitrate in a matter that is 'within Congress' power to reach under the Commerce Clause.'" *Barbour v. CIGNA Healthcare of N.J., Inc.*, No. 02-417, 2003 WL 21026710, at *3 (D.N.J. Mar. 3, 2003) (quoting *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 292 (3d Cir. 2001)); *see also* 9 U.S.C. § 2 (pursuant to the FAA, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable ...."). In this instance, the FAA applies to this dispute, as both parties assert, because the MIPA governed the terms of an interstate business transaction between Plaintiffs, two New Jersey entities, (Compl. at 1), and Quantum Holdings, a Delaware corporation (*see* MIPA § 4.1).

Under the FAA, a court may "stay federal court proceedings in any matter referable to arbitration, and ... compel arbitration if one party has failed to comply with an agreement to arbitrate." *Singh*, 2017 WL 396545, at *3 (quoting 9 U.S.C. §§ 2-4). Courts apply a two-step process to determine whether a party may be compelled to arbitrate under the FAA. A court must consider "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement."[3]

---

[3] Courts generally apply a strong presumption in favor of enforcing arbitration agreements. This presumption "does not extend, however, to non-signatories to an agreement; it applies only when

4

*Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009)). In addition, the FAA instructs courts "to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

Plaintiffs contend that at the motion to dismiss stage, the Court must take the allegations in the Complaint as true. Because the Complaint alleges that the parties, including Quantum Income, collectively entered into the MIPA, Plaintiffs argue that the Court must review these facts, and not look at the operative contract (here, the MIPA), when determining whether to dismiss Quantum Income as a party. Plfs' Br. at 4, 7, D.E. 4. Plaintiffs, however, included the MIPA as an attachment to the Complaint. *See* Compl. ¶ 4. Despite the factual allegations in the Complaint, it is clear from the MIPA that Quantum Income is not a signatory or party to that contract. *See generally* MIPA. "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994). As a result, the Court will look to the MIPA, rather than the allegations in the Complaint, in analyzing this motion to dismiss.

As discussed, the MIPA only involves Plaintiffs and Quantum Holdings. *See* MIPA. Arbitration is strictly a matter of contract. Therefore, in most cases "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Flintkote Co.*, 769 F.3d at 220 (quoting *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)). Because Quantum Income is not a party to the MIPA, the Court cannot compel Quantum Income to

---

both parties have consented to and are bound by the arbitration clause." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014).

participate in any arbitration.

Plaintiffs maintain that Quantum Income should be compelled to arbitrate based on the theories of equitable estoppel, waiver, alter ego, and/or piercing the corporate veil. *See, e.g.*, Plfs' Br. at 10. A signatory to an arbitration agreement may compel a non-signatory to arbitrate "under traditional principles of contract and agency law." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001). Each of the theories that Plaintiffs argue provide a basis to compel Quantum Income to arbitrate are recognized as proper means to compel arbitration over a non-signatory. *Id.* at 195. But in this instance, Plaintiffs fail to plead any facts by which the Court can conclude that Quantum Income must arbitrate the dispute at issue. Critically, Plaintiffs' twelve-paragraph Complaint fails to plead key facts, for example, that Quantum Income was a wholly-owned subsidiary of Quantum Holdings, which would be integral to any decision compelling arbitration under contract or agency law. Plaintiffs further argue that "paragraphs referring to the 'parties'" in the Complaint, were pled to include Quantum Income pursuant to "theories of estoppel, waiver, piercing the corporate veil, and alter ego." Plfs' Br. at 9. The Complaint, however, does not even mention any of these terms and is utterly devoid of any facts to support this argument or give Defendants notice of Plaintiffs' theories.

In their brief, Plaintiffs contend that Quantum Income is a wholly-owned subsidiary of Quantum Holdings that was formed to consummate the underlying transaction. Further, Plaintiffs maintain that Quantum Income was contracting on Quantum Holdings' behalf and that the two entities were interchangeable during negotiations. Plfs' Br. at 9. But Plaintiffs cannot amend their Complaint through a brief. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d

173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). Moreover, Plaintiffs also state that they need to "flesh out the details of the estoppel, agency, or alter ego theories," (Plfs' Br. at 10), essentially conceding that they do not have sufficient facts to support such an argument. Plaintiffs simply fail to provide the Court with any legitimate basis upon which it could compel Quantum Income to arbitrate this dispute.

Plaintiffs also argue that in determining whether to dismiss the Complaint as to Quantum Income, the Court must "focus exclusively on the arbitration provision, rather than on the contract as a whole," citing to *South Jersey Sanitation Company, Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.*, 840 F.3d 138 (3d Cir. 2016), for support. Plfs' Br. at 4. In *South Jersey*, the Third Circuit stated that under the FAA a federal court should only consider challenges to the arbitration provision. "If the challenge encompasses the contract as a whole, the validity of that contract, like all other disputes arising under the contract, is a matter for the arbitrator to decide." 840 F.3d at 143. *South Jersey*, however, is not applicable to this matter because there, the movant did not dispute that it was a party to the contract at issue. Instead, South Jersey Sanitation sought to avoid arbitration by having the entire contract declared invalid. *Id.* at 140-41. This is a critical difference from the facts at hand. Here, Quantum Income is not arguing that the MIPA or even the arbitration clause is invalid; rather, it simply maintains that it is not a party to the contract. As noted, in determining whether the parties are compelled to arbitrate, the Court must first determine "whether there is a valid agreement to arbitrate *between the parties*[.]" *Flintkote Co.*, 769 F.3d at 220 (emphasis added).

In sum, Quantum Income is not a party to the MIPA; therefore, the Court lacks any factual

7

basis to compel Quantum Income to arbitration. Because Plaintiffs' sole purpose in this case is to compel arbitration, Quantum Income's motion to dismiss is granted.

## IV. REQUEST TO STAY THE PROCEEDINGS

In the alternative, Plaintiffs ask that the Court stay the matter as to Quantum Income. Plfs' Br. at 12. Pursuant to Section 3 of the FAA, a Court may stay a proceeding until arbitration is complete. 9 U.S.C. § 3. The classic situation in which a stay under Section 3 is appropriate is when the case involves a claim that is subject to arbitration and other claims that are not. In those situations, a court may stay the entire the case while the arbitrable issue is resolved. *See Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709, 712 (3d Cir. 2009). Section 3 cannot "reasonably be read to resolve issues presented in situations involving a party who has not committed itself to arbitrate any issue before the court . . . [and] was not intended to mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate." *Id.* As a result, the Court will not stay this matter as to Quantum Income while the other parties arbitrate the underlying dispute.

The Court will also not stay this matter for a more fundamental reason – a stay would serve no purpose. This case exists solely to compel arbitration for the alleged breach of the MIPA; there is no other relief sought. Thus, after deciding the issue concerning whether Quantum Holdings is compelled to arbitrate, there is nothing for the Court to stay. Consequently, Plaintiffs' request to stay this matter is denied.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [D.E. 3] is **GRANTED**. The Complaint, therefore, is dismissed as to Defendant Quantum International Income Corp. The dismissal, however, is without prejudice to allow Plaintiffs an opportunity to file an amended

complaint. Plaintiffs have thirty (30) days to file an amended complaint, if they so choose, consistent with this Opinion. If Plaintiffs fail to file an amended complaint, the dismissal as to Defendant Quantum International Income Corp. will be with prejudice. An appropriate Order accompanies this opinion.

Dated: May 19, 2017

_____
John Michael Vazquez, U.S.D.J.