UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COLUMBUS LTACH MANAGEMENT, LLC & COLUMBUS LTACH, LLC, *Plaintiffs*, v. QUANTUM LTACH HOLDINGS, LLC, *et al*, *Defendants*. | Civil Action No. 16-6510 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Defendants Quantum International Income Corp. ("Quantum Income") and Manu Sekhri's (collectively "Defendants") motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 34. Plaintiffs Columbus LTACH Management, LLC and Columbus LTACH, LLC (collectively "Plaintiffs") filed a brief in opposition, D.E. 38, to which Defendants replied, D.E. 41.[1] Defendants Quantum LTACH Holdings, LLC ("Quantum Holdings") and Grant White did not participate in the motion. The Court reviewed the submissions in support and in opposition and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED**.

---

[1] In this Opinion, Defendants' motion to dismiss (D.E. 34) will be referred to as "Defs. Br."; Plaintiffs' brief in opposition (D.E. 38) will be referred to as "Plfs. Opp."; and Defendants' reply brief (D.E. 41) will be referred to as "Defs. Reply."

I.      **FACTUAL[2] AND PROCEDURAL HISTORY**

As a brief overview, this matter involves a failed deal between the parties in which Quantum Holdings was to purchase from Plaintiffs a specialty hospital located in Newark, New Jersey. SAC ¶ 5. Plaintiffs allege that Quantum Holdings is "nothing more than an alter-ego of Quantum [Income]." *Id.* ¶ 9. In contemplation of the purchase, Quantum Holdings and Plaintiffs entered into a Membership Interest Purchase Agreement ("MIPA"), which provided for a "Break Up Fee" if, under certain circumstances, the deal did not close. *Id.* ¶¶ 5, 7. The deal did not close. *Id.* ¶ 34.

On March 21, 2016, after it "became clear" that Defendants would not deliver the purchase price, Plaintiffs filed a demand for arbitration in accordance with the terms of the MIPA. *Id.* ¶ 35. Defendants did not respond to Plaintiffs' demand. *Id.* ¶ 39. As a result, Plaintiffs filed a Complaint in the Superior Court of New Jersey on August 31, 2016, seeking to compel Defendants to arbitrate. *Id.* ¶ 40. The Complaint did not ask for any relief other than to compel arbitration. *See* Notice of Removal Ex. A. On October 5, 2016, Quantum Income removed the matter to the District of New Jersey, *see* Notice of Removal, and then filed a motion to dismiss on November 3, 2016, D.E. 3. The Court granted Quantum Income's motion. D.E. 7-8.

Plaintiffs filed an Amended Complaint (the "FAC") on June 15, 2017 that completely abandoned their original remedy to compel arbitration. Instead, the FAC alleged the following: breach of contract (Count I); breach of implied covenant of good faith and fair dealing (Count II);

---

[2] The factual background is taken from Plaintiffs' Second Amended Complaint (the "SAC") and its exhibits. D.E. 27. When reviewing a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).

tortious interference with contractual relations (Count III); fraudulent and negligent misrepresentation (Count IV). D.E. 9. Defendants filed a motion to dismiss seeking to dismiss Count III as to Quantum Income and Count IV as to Quantum Income and Sekhri. D.E. 13. On May 31, 2018, the Court granted Defendants' motion. D.E. 25, 26. The Court provided Plaintiffs with leave to file a second amended complaint, and Plaintiffs filed the SAC on June 30, 2018. D.E. 27. Defendants subsequently filed the instant motion, which seeks dismissal of Count III, a claim for tortious interference with contractual relations as to Quantum Income and Sekhri. D.E. 34.

## II.    MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if

plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III.     LAW AND ANALAYSIS

Defendants seek to dismiss Count III, which alleges tortious interference with contractual relations. In the FAC, Plaintiffs pled that Quantum Holdings was an alter-ego of Quantum Income. Based on the alter-ego allegation, this Court determined that for the purposes of Plaintiffs' tortious interference claim, Quantum Income was considered to be the same as Quantum Holdings. Thus, this Court dismissed the tortious interference claim as to Quantum Income because it could not, as a matter of law, interfere with its own contract. Opinion at 7-10, D.E. 25. In the SAC, Plaintiffs still plead that Quantum Holdings is the alter ego of Quantum Income. SAC ¶ 9. But Plaintiffs also plead that "[s]hould this court find that Quantum [Holdings] was not an alter-ego of Quantum [Income], the court may also find that the facts support a claim that Quantum [Income] tortuously [sic] interfered with the [MIPA]." *Id.* ¶ 66. Thus, Plaintiffs maintain that as for Quantum Income, Count III is pled as an alternate claim. Plfs. Opp. at 7.

Generally, the Federal Rules of Civil Procedure permit parties to "plead alternative and inconsistent legal causes of action that arise out of the same facts." *Nieves v. Lyft, Inc.*, No. 17-6146, 2018 WL 2441769, at *19 (D.N.J. May 31, 2018). Rule 8 states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). A party may also "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, for example, a plaintiff can assert a count for intentional wrongdoing along with a count for negligence. But

4

here, Plaintiffs' Count III is not pled in the alternative. Rather, Plaintiffs plead inconsistent facts within a single claim.[3] Meaning, in Count III, Plaintiffs plead that Quantum Holdings either is or is not the alter-ego of Quantum Income. Moreover, the determination of whether Quantum Holdings is an alter-ego is only relevant to Count III. Consequently, Plaintiffs do not plead alternate claims as contemplated by Rule 8. *See, e.g., In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001) (stating that Rule 8 does not "grant[] plaintiffs license to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim").

Even if the Court were to accept Plaintiffs' alternate theory, the tortious interference claim is implausibly pled for both Quantum Income and Sekhri. Under New Jersey law,[4] a plaintiff seeking to establish a claim of tortious interference with contractual relations "must prove (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 388 n.18 (D.N.J. 2016) (quotation omitted). In addition, as discussed in the prior motion to dismiss opinion, a corporate affiliate can only be liable for tortious interference if the defendant acts maliciously or in bad faith. Opinion at 7-8 (quoting *Gavornik v. LPL Fin. LLC*, No. 14-955, 2014 WL 3844828, at *8 (D.N.J.

---

[3] Also, of note, Plaintiffs do not plausibly allege their alternate facts. Instead, the SAC indicates that "[s]hould this court find that Quantum [Holdings] was not an alter-ego of Quantum [Income], the court may also find that the facts support a claim that Quantum [Income] tortuously [sic] interfered with the existing contract between Quantum [Holdings] and Plaintiffs." SAC ¶ 66. This allegation does not provide any plausible facts as to why Quantum Holdings was not an alter-ego of Quantum Income.

[4] The MIPA provides that any claim arising out of or as a result of the contract will be governed by New Jersey law. MIPA § 10.1.7, D.E. 27-1. Thus, Plaintiffs' claim for tortious interference is governed by New Jersey law.

Aug. 5, 2014)). To assess whether a corporate affiliate defendant acted in bad faith, courts may consider the following: "the nature of and motive behind the conduct, the interests advanced and interfered with, societal interests that bear on the rights of each party, the proximate relationship between the conduct and the interference, and the relationship between the parties." *Id.*

Plaintiffs allege that Quantum Income and Sekhri acted with bad faith because Defendant White and/or Sekhri withdrew approximately $4 million CAD from capital that was earmarked for the hospital purchase. SAC ¶¶ 18, 58. Because of this withdrawal, Plaintiffs allege that a third-party hedge fund backed out of its commitment to finance the deal. *Id.* ¶ 24. Putting aside the fact that the contemporary documentary evidence only refers to White, not Sekhri, as to withdrawing the funds,[5] the short-form prospectus attached to the SAC clearly indicates that Quantum Income could use $4,196,650 CAD for "Working Capital and General Corporate Purposes[.]" D.E. 27-3 at 8. In fact, Plaintiffs' counsel's September 30, 2015 letter indicates that the "subscription agreement[6] allowed [White] $4,196,650 in working capital" and that the funds were released on July 28, 2015. SAC ¶ 25; D.E. 27-4. As a result, Plaintiffs' allegations that "[b]y withdrawing over $4 million CAD from the equity raise, White violated [] the terms of the equity raise" (SAC ¶ 18), and that White and Sekhri "had no authority express or implied to withdraw funds designated for closing the transaction" (*id.* ¶ 61) are contradicted by the clear terms of the subscription agreement (D.E. 27-3 at 8).

---

[5] In fact, certain portions of the SAC indicate that it was only White who withdrew the funds. *See, e.g.*, SAC ¶ 18 ("By withdrawing over $4 million CAD from the equity raise, *White* violated both the terms of the equity raise, [and] tortuously interfered in defendants' agreement with plaintiffs[.]" (emphasis added)).

[6] It appears that the "subscription agreement" referenced in the September 30 letter and the SAC is the short-form prospectus that was provided to Plaintiffs' counsel on September 38, 2015 and also attached to the SAC in Exhibit C. No party has argued to the contrary.

In other words, White's withdrawal was expressly permitted by the subscription agreement. *See Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)) (explaining that when assessing contradictions between a document that is referenced or relied upon in a pleading and the factual allegations in the pleading, the document controls). As a result, Plaintiffs fail to adequately plead that any Defendant acted in bad faith. *See, e.g., Provident Bank v. Antonucci*, No. 12-7133, 2014 WL 7051781, at *9 (D.N.J. Dec. 12, 2014) (concluding that tortious interference claim failed as a matter of law where the plaintiff had an absolute right to foreclose on property such that the plaintiff could not have *wrongfully* interfered with the defendant's rights by instituting foreclosure proceedings); *see also Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 306 (2001) (explaining that malice within a claim for tortious interference claim "means that harm was inflicted intentionally and *without justification or excuse*") (emphasis added).

Plaintiffs counter that whether Quantum Income was entitled to the withdrawal is irrelevant because even if the withdrawal was permitted, Quantum Income acted in bad faith when it "touted the availability of these funds to plaintiffs" and presented financing companies with information about an escrow account that showed $20 million CAD available for use for the hospital purchase. Plfs. Opp. at 7-8 (citing SAC ¶¶ 21-24). First, Plaintiffs did not plead any plausible facts that support this argument. Instead, the SAC alleges that "[u]pon information and belief, this [$4 million CAD] withdrawal caused Natixis to back out of their commitment to finance the purchase price in the MIPA." SAC ¶ 24. The allegations say nothing about Quantum Income presenting financing companies with information as to $20 million CAD in an escrow account. Second, Plaintiffs' factual allegations contradict the documentary proof that they provided with the SAC.

7

The short-term prospectus indicates that slightly over $4 million CAD could be used for "Working Capital and General Corporate Purposes[.]" D.E. 27-3. Plaintiffs have not alleged that the short-form prospectus was inaccurate or somehow fraudulent. Thus, any potential investor would have known that Quantum Income had the ability use $4 million from the proceeds for other than the hospital purchase.

For the foregoing reasons, Count III is dismissed as to Quantum Income and Sekhri.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (D.E. 34) is **GRANTED**. When granting a motion to dismiss, a court must decide whether to dismiss with or without prejudice, the latter of which provides a plaintiff with opportunity to amend. Dismissal with prejudice is appropriate if an amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004). In its prior opinion, the Court set forth the deficiencies with Plaintiffs' tortious interference count. D.E. 25. Plaintiffs have been unable to cure those deficiencies in their SAC. In addition, Plaintiffs did not request leave to file a third amended complaint should the Court grant the motion to dismiss. As a result, the Court concludes that any further amendment would be futile. *See, e.g., Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013) ("Although the grant of a motion to dismiss is usually without prejudice, a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings."). Therefore, the Court concludes that any further attempt would be futile. Accordingly, Count III dismissed with prejudice as to Quantum Income and Sekhri. *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000) (stating that a court must grant leave to amend a

complaint absent evidence that amendment would be futile or inequitable). An appropriate Order accompanies this opinion.

Dated: May 29, 2019

                                                                 John Michael Vazquez, U.S.D.J.